UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Christopher Barrett,             :
Plaintiff,                       :
                                 :
v.                               :   No. 1:08-cv-203
                                 :
Prison Health Services, Inc. and :
Paul G. Cotton, M.D., P.C.,      :
Defendants.                      :

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
(Doc. 42)

Plaintiff Christopher Barrett ("Barrett") brings this tort action against Prison Health Services, Inc. ("PHS") and Paul G. Cotton, M.D., P.C. ("Cotton"). Barrett claims that the defendants are jointly and severally liable for injuries he sustained from an assault in October, 2005. (Doc. 31). Presently before the Court is Cotton's Motion to Dismiss for lack of subject-matter jurisdiction. (Doc. 42). For the reasons stated below, I recommend that Cotton's motion be GRANTED.

**Background**

For purposes of this motion to dismiss the following facts, as stated in the Amended Complaint (Doc. 31), are assumed to be true. In October 2005 Barrett was employed as a correctional officer by the Vermont Department of Corrections, and worked at the Northern Correctional Facility in Newport, VT. Id. ¶¶ 7-8. While working on October 2, 2005, Barrett was assaulted by inmate Daniel

Heart and sustained the injuries for which he now seeks legal redress.  Id. ¶ 9.  During the relevant time period Inmate Heart suffered from a variety of psychiatric disorders, for which he required medication and other treatment.  Both PHS and Cotton were contracted by the state of Vermont to administer such treatment to Heart and other inmates for whom it was necessary.  Id. ¶¶ 16-20.

Barrett alleges that the defendants' conduct in administering mental health care to Heart fell below the relevant standard of care, and that this conduct was a proximate cause of Heart's assault on Barrett.  Id. ¶ 45.  Barrett also alleges that the defendants' violated their duty of care by not warning him that Heart was a potentially violent individual that would pose a "clear and present danger" if placed in the prison's general population.  Id. ¶¶ 46-47.

When this litigation began with the filing of Barrett's original complaint on September 24, 2008, PHS was the only named defendant.  (Doc. 1).  However, following a period of discovery Barrett decided to join Cotton as a defendant as well, and he filed a Motion to Amend his complaint on February 20, 2009.  (Doc. 28).  This Court granted the motion as unopposed on February 24, 2009 (Doc. 30), and Barrett filed the Amended Complaint naming both PHS and Cotton on February 25, 2009.  (Doc. 31).

Barrett is domiciled in, and is therefore a

citizen of, Vermont.[1]  Id. ¶ 1; see Steigleder v. McQuesten, 198 U.S. 141 (1905).  PHS is a corporation doing business in Vermont with its principal place of business in Tennessee.  Cotton is a professional corporation organized under Vermont law.  (Doc. 31 ¶¶ 2-3).

Before the Court is Cotton's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction.  (Doc. 42).

## Discussion

Barrett invokes this Court's "diversity jurisdiction" under 28 U.S.C. § 1332(a)(1), which gives the federal district courts original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States[.]" (Doc. 31 ¶ 5).  This statute has been consistently held to "require complete diversity of citizenship.  That is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff."  Owen Equip. and Erection Co. v. Kroger, 437 U.S. 365, 373 (1978).

In its Motion, Cotton argues that since both

---

[1] Cotton is correct to point out that the party invoking diversity jurisdiction must allege its existence on the face of the complaint or removal petition, and that Barrett's allegations of party *residency*, rather than *domicile*, are technically insufficient.  (Doc. 42 ¶ 7); Leger v. Dessureault, 733 F. Supp. 786, 787 n.1 (D. Vt. 1990).  Even setting aside this defect, however, this Court lacks subject-matter jurisdiction over Barrett's claims against Cotton.

3

Barrett and Cotton are Vermont citizens, complete diversity is lacking and this Court is deprived of jurisdiction at least over the claims against Cotton, if not the entire matter.  (Doc. 42 ¶ 9).

In response, Barrett does not dispute that § 1332 is the only basis for original federal jurisdiction,[2] nor does he contend that either he or Cotton are in fact citizens of different States,[3] thus rendering diversity complete. (Doc. 43).  Instead, Barrett argues that diversity should only be evaluated at the time the initial complaint is filed, and that subsequent events, including the addition of non-diverse parties, should not work to destroy complete diversity once established.  (Doc. 43 at 1).  Since the original complaint did not name a Vermont citizen defendant, Barrett argues, diversity is complete and this Court retains jurisdiction even over subsequently added claims against a non-diverse defendant.  Id. at 3-4.

As described below, both the Supreme Court and Congress have explicitly rejected Barrett's approach in this context, and, consequently, this Court lacks subject-matter jurisdiction over the cause of action against Cotton.

---

[2]  In particular, Barrett does not suggest that this case presents a federal question that would bring it within the jurisdiction of this Court under 28 U.S.C. § 1331.

[3]  A "Corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business[.]"  28 U.S.C. § 1332(c)(1).

Barrett's claim against Cotton is a state law tort claim against a non-diverse defendant and, as such, it does not itself invoke an independent basis for federal subject-matter jurisdiction. Accordingly, if this Court may adjudicate this claim it must be pursuant to its "supplemental" jurisdiction.[4] 13D CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3567 at 319-320 (2008); see also Estate of Reed v. United States, et al., 2006 WL 2043100, *2 (W.D. Mo. July 20, 2006) (Not Reported) (noting that federal supplemental jurisdiction is invoked when joint tortfeasors over whom there is no independent federal claim are added via amended complaint).

The supplemental jurisdiction of federal courts is regulated by statute. 28 U.S.C. § 1367(a) provides that in any civil action in which original federal jurisdiction is established, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . [s]uch supplemental jurisdiction shall include claims that involve

---

[4] "Supplemental" jurisdiction is the statutorily created term that covers the doctrines of both "ancillary" and "pendent" jurisdiction developed in the federal case law. See 28 U.S.C. § 1367; Herrick Co., Inc. v. SCS Commc'n, Inc., 251 F.3d 315, 325 n.6 (2d Cir. 2001).

5

the joinder or intervention of additional parties."[5]  Cotton apparently does not dispute that subsection (a) of § 1367 is fully satisfied here.  (Doc. 44); see also Timbrook v. Metzeler Auto. Profile Sys. Iowa, Inc., 209 F.R.D. 154, 156 (S.D. Iowa 2002) ("[A]n action . . . against an alleged joint tortfeasor is part of the same case or controversy.").

But while subsection (a) grants supplemental jurisdiction, subsection (b) proscribes the exercise of that jurisdiction over certain categories of claims brought in diversity actions.  28 U.S.C. § 1367(b) states that:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b).  In this case, § 1367(b) is implicated because this Court's original jurisdiction over Barrett's

---

[5]  § 1367(a) effectively codifies the Supreme Court's holding in United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966), which held that federal courts have the power to hear claims that "derive from a common nucleus of operative fact" with the claim that invokes original federal jurisdiction. Id. at 725.  This test has been held to delineate the Article III constitutional limits of supplemental jurisdiction to which § 1367(a) extends.  See, e.g., Voda v. Cordis Corp., 476 F.3d 887, 894-895 (Fed. Cir. 2007); 13 CHARLES A. WRIGHT ET AL. FEDERAL PRACTICE & PROCEDURE § 3523 at 172-173 (2008).

6

claim against PHS, a citizen of Tennessee,[6] is based solely on § 1332. See Exxon Mobil Corp. v. Allapattah Serv., Inc., 545 U.S. 546, 560 (2005) (explaining that § 1367(b) applies only to diversity cases).

Further, since the original complaint was amended to join a permissive-that is, not indispensable- defendant, the joinder was necessarily made pursuant to Rule 20, a proposition Barrett does not dispute. See Fed. R. Civ. P. 20(a)(2); R & M Jewelry, LLC v. Michael Anthony Jewelers, Inc., 221 F.R.D. 398, 399 (S.D.N.Y. 2004) ("To add a party, [the plaintiff] must also satisfy the requirements of Rule 20(a), which specifically addresses permissive joinder of parties."). It is of no matter that Barrett mentions only Rule 15(a)(2) as grounds for his Motion to Amend. (Doc. 28); Rosado v. Johnson, 589 F. Supp. 2d 398, 400 (S.D.N.Y. 2008) ("[T]he nature of a motion is determined by its substance and not the label attached to it[.]") (internal citations omitted). Rule 15(a)(2) governs only the

---

[6] The Court notes once again Barrett's insufficient allegations of jurisdiction. In his Amended Complaint, Barrett indicates only that PHS does business in Vermont and that its principal place of business is in Tennessee. He does not state, however, in which State PHS is incorporated, and thus leaves open the possibility that PHS is a citizen of another State in addition to Tennessee. (Doc. 31 ¶ 2); 28 U.S.C. § 1332(c).

7

procedure by which Barrett could amend his Complaint,[7] and, when seeking to join a permissive defendant via amendment, Rule 20 governs whether or not joinder is appropriate.[8]

Finally, it is clear that since Cotton is a citizen of the same state as Barrett, its inclusion as a defendant is contrary to the complete diversity rule, and is therefore "inconsistent with the jurisdictional requirements of section 1332." See Herrick Co., Inc. v. SCS Commc'n, Inc., 251 F.3d 315, 325 nn.7-8 (2d Cir. 2001); Ascension Enter., Inc. v. Allied Signal, Inc., 969 F. Supp. 359, 361 (M.D. La. 1997); 13E CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3608 at 368-369 (2009) ("parties that are joined under Rules 19 and 20 . . . must independently satisfy the basic jurisdictional requirements for diversity cases").

Accordingly, § 1367(b) forbids the extension of this Court's supplemental jurisdiction over Barrett's claim against Cotton, a non-diverse Rule 20 defendant. By its plain terms, "there is nothing about 1367(b) that is discretionary; if the conditions of 1367(b) are met, the

---

[7] Fed. R. Civ. P. 15(a)(2) states that "a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

[8] Fed. R. Civ. P. 20(a)(2) states that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

8

court 'shall not have' supplemental jurisdiction over the additional claims." Central Synagogue v. Turner Const. Co., 64 F. Supp. 2d 347, 351 (S.D.N.Y. 1999).

This conclusion is further supported by the Supreme Court's holding in Owen Equip. v. Kroger, 437 U.S. 365 (1978), the judicial precursor to § 1367(b). Siteworks Contracting Corp. v. Western Sur. Co., 461 F. Supp. 2d 205, 211 (S.D.N.Y. 2006). In Kroger, the plaintiff amended her complaint to add claims against a non-diverse third party defendant impleaded into the action by the original diverse defendant. Kroger, 437 U.S. at 367-368. After explaining the complete diversity required by § 1332, the Court held that the district court lacked jurisdiction over the claim against the non-diverse impleaded defendant. Id. at 377 n.21. The Court explained that "neither the convenience of litigants nor considerations of judicial economy can suffice to justify extension of the doctrine of ancillary jurisdiction to a plaintiff's cause of action against a citizen of the same State in a diversity case. Congress has established the basic rule that diversity jurisdiction exists under 28 U.S.C. § 1332 only when there is complete diversity of citizenship." Id. at 377.

The Court further observed that permitting the plaintiff to bring claims against an impleaded non-diverse

9

defendant would open the door for plaintiffs to use various procedural tactics to completely circumvent § 1332. For example, "a plaintiff could defeat the statutory requirement of complete diversity by the simple expedient of suing only those defendants who were of diverse citizenship and waiting for them to implead nondiverse defendants." Id. at 374.

This is not dissimilar to the end-run around complete diversity that Barrett seeks to make here. If anything, Barrett's attempt to join a non-diverse defendant himself, rather than to depend on a motion by the original defendant, is a more egregious example of the very jurisdictional gamesmanship explicitly rejected by the Supreme Court. In any case, the key similarity is that "the nonfederal claim here was asserted by the plaintiff, who voluntarily chose to bring suit upon a state-law claim in a federal court." Id. at 367. Accordingly, Barrett "cannot complain if ancillary jurisdiction does not encompass all of his possible claims in a case such as this one, since it is he who has chosen the federal rather than the state forum and must thus accept its limitations." Id.; see also Viacom Intern., Inc. v. Kearney, 212 F.3d 721, 726-727 (2d Cir. 2000) ("§ 1367(b) reflects Congress' intent to prevent original plaintiffs–but not defendants or third parties-from circumventing the requirements of diversity.").

Given the plain language of § 1367(b) and the case law upon which it is based, this Court simply lacks the power to entertain a state law claim over a non-diverse defendant joined under Rule 20, regardless of how related that claim is to one properly within the Court's original jurisdiction.  See Kroger, 437 U.S. at 372-373.

Barrett's argument to the contrary is unpersuasive.  (Doc. 43).  Barrett urges the Court to apply the general "time of filing" rule, according to which the completeness of diversity is evaluated only at the original time of filing, and must be left undisturbed by subsequent events.  (Doc. 34 at 3); E.R. Squibb & Sons, Inc. v. Lloyd's & Companies, 241 F.3d 154 (2d Cir. 2001).[9]  Since application of this rule here is specifically proscribed by statute and would open a loophole in the complete diversity requirement already considered and closed by the Supreme Court, the Court declines to adopt Barrett's approach.

Barrett cites Freeport-McMoRan, Inc., et al. v. K N Energy, Inc., 498 U.S. 426, 428 (1991) and Wichita R.R. & Light Co. v. Public Util. Comm'n of Kansas, 260 U.S. 48, 54

---

[9] This "time of filing" rule generally means that once the complaint is filed, a subsequent change in the law or the citizenship of the parties can neither cure nor destroy diversity.  See, e.g., Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567 (2004); E.R. Squibb, 241 F.3d at 164; Louisville, N.A. & C.R. Co. v. Louisville Trust Co., 174 U.S. 552 (1899).  Such situations are obviously quite different than here, where application of this rule would permit plaintiffs to artificially manufacture jurisdiction by initially naming diverse parties in their complaint, only to later join non-diverse defendants via subsequent amendment.

11

(1922) for the rule that "[j]urisdiction, once acquired . . . is not divested by a subsequent change in the citizenship of the parties. Much less is such jurisdiction defeated by the intervention, by leave of the court, of a party whose presence is not essential to a decision of the controversy between the original parties."[10] Barrett argues that since Cotton is "not essential" these cases support jurisdiction over the cause of action against him. (Doc. 43 at 3).

But these cases, and the reasoning within them, do not apply here. Freeport-McMoRan involved the substitution of a nondiverse *plaintiff* pursuant to Fed. R. Civ. P. 25(c) after a transfer of interest in the disputed contract. Freeport-McMoRan, 498 U.S. at 427. Of course, unlike Rule 20 defendants, § 1367(b) does mention plaintiffs substituted via Rule 25, and for that reason alone this case is irrelevant. Moreover, the Court rested its decision in Freeport-McMoRan, in part, on the policy considerations particular to the transfer of interests between plaintiffs in ongoing litigation. Id. at 428-429.

In Wichita, the Court upheld subject-matter

---

[10] Barrett also relies on a section of Wright & Miller's Federal Practice treatise that he submitted as an exhibit for the Court's consideration. (Doc. 43-2). The first line of the section explains that "[i]t has long been hornbook law . . . that whether federal diversity citizenship jurisdiction exists is determined by examining the citizenship of the parties at the time the action is commenced[.]" Id. Just two pages later, though, and also included as part of Barrett's exhibit, the treatise says that "But, parties that are joined under Rules 19 and 20 . . . must independently satisfy the basic jurisdictional requirements for diversity cases." Id.

12

jurisdiction over claims against a non-diverse defendant that intervened on its own initiative.  <u>Wichita</u>, 260 U.S. at 52.  This case is slightly more on point since it involves claims by an original plaintiff against a non-diverse defendant, albeit one that entered ongoing litigation on its own accord.

Cotton argues that <u>Wichita</u> is irrelevant because it was decided in 1922, prior to the enactment of the Federal Rules of Civil Procedure and § 1367.  (Doc. 44 at 9).  This view of <u>Wichita</u> has its appeal, especially since the intervention of parties is currently governed by Rule 24, and § 1367(b) denies supplemental jurisdiction "over claims by plaintiffs against persons made parties under Rule . . . 24."  <u>See</u> Fed. R. Civ. P. 24.  However, some courts have held that § 1367(b) bars supplemental jurisdiction over claims against intervenors of right only if the intervenor is indispensable, thus providing <u>Wichita</u> with some continued vitality.  <u>See</u>, <u>e.g.</u>, <u>Mattel, Inc. v. Bryant</u>, 446 F.3d 1011, 1013 (9th Cir. 2006) (citing <u>Wichita</u>, 260 U.S. at 54).  These courts argue that extending jurisdiction over a non-diverse "dispensable" intervenor is not "inconsistent with the jurisdictional requirements of § 1332," and therefore

not prohibited by § 1367(b).[11]  See, e.g., Mattel, 466 F.3d at 1013.

Whether or not such cases are rightly decided, though, they are distinguishable from the present case. In Kroger, the Supreme Court made clear that "in determining whether jurisdiction exists, the context in which the nonfederal claim is asserted is crucial." Kroger, 437 U.S. at 375.  Here, the nonfederal claim is asserted by the plaintiff over a defendant joined by the plaintiff under Rule 20.  In this context, both the Supreme Court and the Second Circuit have recognized that extending jurisdiction would contravene § 1332.  Id. at 376; Herrick, 251 F.3d at 325 nn.7-8.  Indeed, when the Supreme Court decided Kroger it could have followed Wichita and its progeny, but the Court decided that complete diversity, even of subsequently joined defendants, is required.  The codification of this determination in § 1367(b) further reaffirms that the "time of filing" rule does not control the case at bar, and that

---

[11]  In Mattel, the Ninth Circuit may have misunderstood the relationship between § 1367(b) and the case law that governed before its enactment.  There, the Court argued that because courts have long recognized the judge-made exception to complete diversity permitting dispensable non-diverse intervenors, § 1367(b) cannot preclude such jurisdiction without a finding that it somehow "trumps" § 1332.  But this conclusion misses the point that the complete diversity required by § 1332 would clearly be offended by a non-diverse intervenor without, to use the Ninth Circuit's own phrase, the "judge-made exception for a non-indispensable defendant-intervenor."  Mattel, 466 F.3d at 1013.  Thus § 1367 simply makes clear that the judge-made exception no longer applies to claims against a defendant who intervenes pursuant to one of the procedural rules specifically enumerated in § 1367(b).

14

supplemental jurisdiction may not be extended over claims against non-diverse Rule 20 defendants in diversity actions.

Barrett also fails to square his position with the existence of § 1367(b). Indeed, he mentions the statute only to say that Cotton's argument must be rejected because it concerns "whether federal courts are authorized to exercise supplemental jurisdiction over non-diverse parties under 28 U.S.C. § 1367." Id. at 4. But as the discussion to this point shows, that is precisely the question at issue. To the extent that Barrett believes § 1367 is inapplicable, he is mistaken for all of the reasons set forth above.

Perhaps Barrett intends to offer a more nuanced argument, one that weaves his reliance on the "time of filing" rule into the statutory language of § 1367(b). Such an argument could proceed like this: according to its final sentence, § 1367(b) only withholds supplemental jurisdiction when exercising it "would be inconsistent with the jurisdictional requirements of section 1332." Given the "time of filing" exception applied in Wichita, and reaffirmed in Mattel, it would not be inconsistent with § 1332 for this Court to entertain a claim against a subsequently added non-diverse defendant. Therefore, § 1367(b) does not deprive the Court of supplemental

jurisdiction in this case.

This argument would fail for at least two reasons. First, as stated above, it appears that cases from both the Second Circuit and the Supreme Court compel a finding that destroying complete diversity with the addition of a Rule 20 defendant is necessarily "inconsistent with the jurisdictional requirements of section 1332." See, e.g., Herrick Co., Inc., 251 F.3d at 325 nn.7-8.

Second, and perhaps most importantly, this approach would render § 1367(b) completely powerless as to claims against Rule 20 defendants, despite the fact that such claims are clearly and unambiguously included in the statute. If the "time of filing" rule were to control in this way, there would *always* be supplemental jurisdiction over claims against Rule 20 defendants, since such defendants are added after the complaint is first filed. The Court cannot construe § 1367(b) in a way that would render it completely ineffective.[12]

---

[12] Nor can Barrett overcome this difficulty by suggesting that § 1367(b) may still exclude supplemental jurisdiction over non-diverse Rule 20 defendants joined contemporaneously with the initial filing-i.e., non-diverse defendants named in the original complaint. Even assuming that Rule 20 joinder would be invoked in such a situation, § 1367 would not apply because there would be no federal claim, i.e., no claim independently invoking original jurisdiction, onto which the supplemental claim could attach. In Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 554 (2005), the Supreme Court held that "[i]ncomplete diversity destroys original jurisdiction with respect to all claims, so there is nothing to which supplemental jurisdiction can attach." Thus if Barrett had sued both Cotton and PHS at the outset, it would not be § 1367(b) depriving this court of supplemental jurisdiction over the claim against Cotton, but rather it would be § 1332 depriving

Finally, Barrett's apparent good-faith in bringing these claims against Cotton following discovery is not a relevant consideration. This Court quite obviously lacks the power to entertain these claims, and nothing about Barrett's subjective intentions can change that. It is worth noting that the plaintiff in <u>Kroger</u> added claims against the impleaded defendant with the good-faith belief that diversity remained complete. In fact, in that case, the defendant may have concealed its citizenship from the plaintiff. <u>Id.</u> at 368-369. There, as here, the reasonable conduct of the plaintiff is not enough to expand the limited jurisdiction of the federal courts beyond its statutorily delineated borders. <u>Id.</u> at 378 n.21.

## **Conclusion**

However well intentioned, Barrett seeks to circumvent the statutory requirement of complete diversity by amending his complaint to add a non-diverse defendant. The relevant case law and statutory authority, in particular § 1367, could hardly be more clear in prohibiting this maneuver. Accordingly, this Court lacks subject-matter jurisdiction over Barrett's cause(s) of action against

---

this Court of original jurisdiction over the entire matter. <u>See</u> <u>also</u> <u>In re Joint Eastern and Southern Dist. Asbestos Litig.</u>, 14 F.3d 726, 730 n.2 (2d Cir. 1993) ("[T]he court may not exercise supplemental jurisdiction over claims unless the court has 'original jurisdiction' over at least one of the plaintiff's claims.").

17

Cotton, and must dismiss such claims.  See Fed. R. Civ. P. 12(h)(3)("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

This Court need not, however, dismiss the entire action, and may, pursuant to Rule 21,[13] sever the "dispensable jurisdictional spoiler" to retain jurisdiction over the original federal claim.  Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 180 (2d Cir. 2007); see also Grupo Dataflux, 541 U.S. at 572-573 ("it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered.") (quoting Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 (1989)).  Here, Barrett only omitted Cotton from his original complaint because he lacked the facts necessary to allege a cause of action against him.  Given that posture, it is unnecessary to dismiss the entire action, and only the misjoinder of Cotton need be corrected.[14]

---

[13]  Fed. R. Civ. P. 21 states: "On motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."

[14]  Although it should not be an issue for his claim against Cotton, which Barrett says he only recently discovered, Barrett's counsel advised that the statute of limitations for all of his claims is tolled under Vermont law while they are pending in federal court.  See 12 V.S.A. § 558(a)(2); 28 U.S.C. § 1367(d).

For all of the foregoing reasons, I recommend that Cotton's Motion to Dismiss (Doc. 42) be GRANTED, and that all of Barrett's claims against Cotton be dismissed from this action without prejudice.

Dated at Burlington, in the District of Vermont, this 22<u>nd</u> day of May, 2009.

<u>/s/ John M. Conroy</u>
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. <u>See</u> Local Rule 72.1, 72.3 & 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).